## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ORA JONES, et al.,

    Plaintiffs,

v.                                    Case No. WDQ-09-3126

HILDA C. WILLIAMS, et al.,

    Defendants.

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned for review of plaintiffs' motion for default judgment and to make recommendations concerning damages, pursuant to 28 U.S.C. § 301 and Local Rule 301.6. (Paper No. 10.) For the reasons discussed herein, I respectfully recommend that plaintiffs' second amended Motion for Entry of Default (Paper No. 16) be GRANTED IN PART AND DENIED IN PART and that damages be awarded as set forth herein.

### I. BACKGROUND

Defendant Hilda Williams owns and operates three businesses in Baltimore, Maryland: an assisted living facility for the elderly located at 4310 Sheldon Avenue, the Trinidad Curried Chicken store located at 3227 Belair Road, and a residential rental unit located at 4539 Sheldon Avenue. (Compl. ¶ 2, Paper No. 1.)[1] Williams employed plaintiffs Ora Jones and Paris Alexander to work at these businesses in various capacities from December 31, 2008 to June 1,

---

[1] Since defendants defaulted on plaintiffs' Complaint, the factual allegations in plaintiffs' Complaint as to liability are accepted as true. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001).

2009. (Id. ¶¶ 5-7.) Specifically, Williams employed Alexander to work 50 hours per week as a handyman and driver at the three businesses and Jones to work 50 hours per week as a cashier, clerk, maid, cook, and caretaker for Williams' elderly clients. (Id.; Alexander Aff., Paper No. 13-10 at 1-2; Jones Aff., Paper No. 13-10 at 3-4.) Williams did not provide plaintiffs with monetary compensation for their work. (Id.) Instead, Williams provided plaintiffs with free rent in the unfinished basement of a property she owns, the value of which was $200 per month to each plaintiff. (Id.)

On November 23, 2009, plaintiffs filed suit in this court alleging that defendant Williams and defendant Catherine's Properties, LLC violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., by failing to compensate plaintiffs in accordance with the Act's minimum wage and overtime provisions. (Compl.) Plaintiffs served Williams personally and as resident agent for Catherine's Properties, LLC with the complaint and summons on December 18, 2009. (Cecil Aff., Jan. 11, 2010, Paper No. 7.) After defendants failed to file an Answer or otherwise defend by the January 8, 2010 deadline to do so, plaintiffs filed a Motion for Entry of Default Judgment (Paper No. 8). On February 16, 2010, the clerk entered a default for want of answer or other defense for Williams and Catherine's Properties, LLC. (Paper No. 9.)

By Memorandum and Order dated March 5, 2010, the undersigned directed plaintiffs to file an amended motion for default judgment that, inter alia, clarifies which defendant employed plaintiffs in each of the three businesses identified in plaintiffs' Complaint. (Paper No. 11.)[2]

---

[2] Plaintiffs' initial motion was improperly filed as one motion seeking entry of default and default judgment. See Fed. R. Civ. P. 55 (outlining two-step process for obtaining default judgment); see also, e.g., Pennington v. Hasan, No. RDB-08-2216 (D. Md. July 13, 2009) ("To obtain default judgment under Rule 55 of the Federal Rules of Civil Procedure, a party must follow a sequential two-step process: (1) obtain entry of default from the Clerk of the Court pursuant to Rule 55(a); and then (2) move the Court for default judgment pursuant to Rule

After plaintiffs failed to clearly articulate the ownership structure of these three businesses in their amended motion, the undersigned issued a letter Order dated July 7, 2010 again directing plaintiffs to clarify this issue. (Paper No. 15.) By letter dated July 12, 2010, plaintiffs' counsel clarified that defendant Hilda Williams owns and manages all three businesses, but that defendant Catherine's Properties, LLC, an LLC managed by defendant Hilda Williams, owns the property at 3227 Belair Road that houses the curried chicken establishment. (Paper No. 17.)

In addition, plaintiffs filed a second amended Motion for Entry of Default Judgment (Paper No. 16) on July 13, 2010 to correct an error in their first amended motion. Specifically, in their amended motion, plaintiffs mistakenly referred to Hilda Williams as Agatha Williams. (Paper No. 13 at 3-4.) Plaintiffs' second amended Motion for Entry of Default Judgment clarifies that Hilda Williams is the correct name of the defendant. (Paper No. 16 at 3-4.)

## II. **STANDARD FOR ENTRY OF DEFAULT JUDGMENT**

In reviewing plaintiffs' Motion for Entry of a Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. Ryan v. Homecomings Fin.

---

55(b)."). Accordingly, the undersigned's March 5th Memorandum and Order also directed plaintiffs to separately file an amended motion for default judgment. (Paper No. 11.)

Ordinarily, plaintiffs would not have been required to serve defendants with their motion for default judgment since defendants have not appeared in this action. Fed. R. Civ. P. 55(b). The undersigned, however, ordered plaintiffs to do so since plaintiffs failed to serve defendants with their request for entry of default. See, e.g., Virgin Records America, Inc. v. Lacey, 510 F. Supp. 2d 588, 591 n.2 (S.D. Ala. 2007) (since "[n]othing in the text of Rule 55 excuses the service requirements for entry of default (as distinguished from motions for default judgment)," plaintiff seeking entry of default must serve defendant); International Brands USA, Inc v. Old St. Andrews, Ltd., 349 F. Supp. 2d 256, 261 (D. Conn. 2004) ("Where a party fails to respond, after notice, the court is ordinarily justified in entering a judgment against the defaulting party." (emphasis added)). But see, e.g., Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508, 512 (9th Cir. 1986) (absence of notice requirement in Fed. R. Civ. P. 55(a) means that plaintiff seeking entry of default judgment not required to serve defendant). While plaintiffs take issue with the undersigned's direction to serve defendants, plaintiffs did so anyway "[t]o appease the Court." (Paper No. 13 at 2.)

3

Network, 253 F.3d 778, 780-81 (4th Cir. 2001). It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. Id.; see also 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. Ryan, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. E.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for the award. See, e.g., Stephenson v. El-Batrawi, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum). In addition, with respect to the character of the amount and judgment, Fed. R. Civ. P. 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

In sum, the court must (1) determine whether the unchallenged facts in plaintiffs' Complaint constitute legitimate causes of action, and, if they do, (2) make an independent

determination regarding the appropriate amount of damages.

### III. DISCUSSION

#### a. Defendants' Liability

Plaintiffs assert two causes of action against defendants. First, plaintiffs assert that defendants violated the FLSA, 29 U.S.C. § 206, which prohibits covered employers from paying employees less than $6.55 an hour. Second, plaintiffs assert that defendants violated the FLSA, 29 U.S.C. § 207, which requires covered employers to pay employees one and one-half times their regular pay rate for any work in excess of forty hours per week.

A business is covered under 29 U.S.C. §§ 206 and 207 if it "employ[s] [individuals] in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s)(1) defines an "[e]nterprise engaged in commerce or in the production of goods for commerce" as an enterprise that, inter alia, "is engaged in the operation of . . . an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution . . ." Id. Since plaintiffs allege that they worked at an assisted living facility, their work at this business is covered under the FLSA. To determine whether plaintiffs' work at the rental unit and curried chicken store is also covered, it is necessary to determine whether those two businesses and the assisted living facility constitute an "enterprise" under the FLSA.[3]

Pursuant to 29 U.S.C. § 203(r), enterprise "means the related activities performed (either through unified operation or common control) by any person or persons for a common business

---

[3] While defendants' curried chicken store and residential rental unit could also independently qualify as covered entities if they each maintain an annual gross volume of sales or business of $500,000 or more, 29 U.S.C. § 203(s)(1), plaintiffs' Complaint does not allege that these businesses maintained such an annual gross volume, nor do any of plaintiffs' subsequent filings.

5

purpose. . . ." Thus, the essential elements of an "enterprise" are: (1) related activities performed, (2) for a common business purpose, and (3) through unified operation or common control. Brock v. Hamad, 867 F.2d 804, 806 (4th Cir. 1989). Since plaintiffs' Complaint alleges that the businesses were operated through the common control of defendant Williams, the third element is met. (Compl. ¶ 2.)

With respect to the first two elements, "[c]ourts have recognized that there is a close relationship between the 'related activities' and 'common business purpose' criteria for FLSA enterprise coverage." Martin v. Deiriggi, 985 F.2d 129, 133 (4th Cir. 1993). "Activities are performed for a common business purpose if they are 'directed toward the same business objective or to similar objectives in which the group has an interest.'" Id. (quoting 29 C.F.R. § 779.213).

In the instant suit, plaintiffs allege that the three businesses share common employees (i.e., plaintiffs worked at all three businesses). In addition, plaintiffs allege that plaintiff Jones brought defendants' elderly clients dinner from the curried chicken store, that defendants' elderly clients lived in the residential rental unit located at 4359 Sheldon Avenue, and that plaintiff Alexander assisted the elderly clients living at 4359 Sheldon Avenue by, inter alia, driving them places, washing their clothes, and feeding them. (Paper Nos. 13-3 & 13-7.) Accordingly, the undersigned concludes that plaintiffs have set forth sufficient factual allegations from which the court could conclude that defendants' three businesses undertake "related activities" for a "common business purpose" and, therefore, constitute an "enterprise" under 29 U.S.C. § 203(r). See Martin, 985 F.2d at 133-34 (motel and restaurant operated under "common business purpose" where guests at motel frequented restaurant, guests' purchases at restaurant could be charged to motel bill, and employees of two establishments interchanged occasionally); Schultz

6

v. Falk, 439 F.2d 340, 346 (4th Cir. 1971) (partners managing apartment buildings constituted "enterprise" where they supervised employees through hierarchy based in central office, provided substantially similar services from project to project, and had common purpose of maintaining and operating apartment buildings), vacated on other grounds, 414 U.S. 190 (1973).

Further, plaintiffs allege that they worked 50 hours per week for this enterprise and the only compensation they received from Williams in exchange for their work was free rent in the unfinished basement of one of Williams' properties, which was worth $200 per month to each plaintiff. (See Letter from Williams to Jones, Paper No. 13-10 at 5 (stating that "normal rent" of basement is $400 per month); Jones Aff., Paper No. 13-4 at 3-4 (representing that plaintiffs shared basement apartment).) Thus, pursuant to plaintiffs' unchallenged factual allegations, Williams failed to pay plaintiffs the minimum wage and overtime compensation for their work at the three businesses identified in plaintiffs' Complaint. Accordingly, plaintiffs have set forth legitimate causes of action under 29 U.S.C. §§ 206 and 207 against defendant Williams.

The undersigned, however, cannot conclude that plaintiffs have set forth legitimate causes of action against defendant Catherine's Properties, LLC. As discussed in Part I above, plaintiffs allege that Catherine's Properties, LLC owns the property that houses the "Trinidad Curried Chicken" business. (Paper No. 17.) It does not, according to plaintiffs, own or manage the curried chicken business. (Id.) Accordingly, plaintiffs' factual allegations are inadequate to establish that defendant Catherine's Properties, LLC was plaintiffs' "employer" as required for the court to hold it liable under 29 U.S.C. §§ 206 and 207. See 29 U.S.C. § 203(d) ("employer" defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee"); Darrikhuma v. Southland Corp., 975 F. Supp. 778, 783 (D. Md. 1997) (plaintiff

must prove he was "employed" by defendant to recover under FLSA).[4]

   b. **Damages**

Plaintiffs allege that they are each entitled to $18,750.00 for Williams' violations of 29 U.S.C. §§ 206 and 207, plus $3,750.00 in attorney's fees, and $475.00 for the costs of this action. (Id.) Accordingly, plaintiffs request a judgment against defendants in the amount of $41,365.00. (Paper No. 13 at 4.)

Plaintiffs arrive at $18,750.00 by first computing the amount defendants would owe them had Williams paid them the federal minimum wage, $6.55 per hour, for 40 hours per week plus time and a half, $9.75 per hour, for the additional 10 hours they worked each week. (Jones Aff., Paper No. 13-10; Alexander Aff., Paper No. 13-10.) This total is $359.50 per week for each plaintiff. (Id.) Plaintiffs multiply this sum by the number of weeks they worked for defendants, 20, and arrive at $7,190.00. (Id.) After subtracting the $1,000.00 rent credit they each received from Williams for their basement apartment ($200 per month for five months), plaintiffs claim that Williams' balance to each plaintiff is $6,190.00. (Id.) Finally, plaintiffs multiply this figure by three because, according to plaintiffs, 29 U.S.C. § 216(b) provides that plaintiffs can recover treble damages for the FLSA violations. (Id.)

29 U.S.C. § 216(b), however, does not allow for treble damages. Instead, it provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be

---

[4] In their Complaint, plaintiffs allege that "Defendants are . . . employer [sic] within the meaning of the Fair Labor Standards Act." (Compl. ¶ 3.) While the court must accept a movant's factual allegations as true at the default judgment stage, this statement is a legal conclusion, which the court need not accept as true. See Louisiana Counseling and Family Services, Inc. v. Makrygialos, LLC, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (although court should accept as true the well-pleaded factual allegations of complaint, court need not, in determining motion for default judgment, accept the moving party's legal conclusions); cf. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("'The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . .'" (quoting Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975))).

8

liable to the employee or employee affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216. While plaintiffs argue in their second amended Motion for Entry of Default Judgment that the court has authority to award treble damages pursuant to Maryland's fair wage law (Paper No. 16 at 4.), plaintiffs did not plead this state law claim in their Complaint. Since "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c), the undersigned recommends denying plaintiff's request for treble damages and instead awarding them double damages, as allowed under the FLSA. Adjusting plaintiffs' request accordingly, plaintiffs are each entitled to $12,380.00.

With respect to plaintiffs' request for attorney's fees, 29 U.S.C. § 216(b) provides that an employee's costs and attorney's fees are recoverable under the FLSA. Plaintiffs submitted an affidavit from their counsel, Ms. Susan Trimble, Esq., with their amended Motion for Default Judgment in which Ms. Trimble represents that: (1) she spent 15 hours on this case; (2) the value of her time is $250.00 per hour; and (3) she has been a member of the bar since 2005. (Paper No. 13-12.) I conclude that 15 hours is a reasonable amount of time to have spent on this case to date. In addition, Ms. Trimble's hourly rate falls within the range of this court's guidelines for determining attorney's fees for lawyers admitted to the bar for five to eight years. Local Rules App'x B, at 3.b (D. Md. 2010). Accordingly, I conclude that plaintiffs' request for attorney's fees in the amount of $3,750.00 is reasonable and recommend granting this request. I also find that plaintiffs' request for $475.00 in costs is reasonable and recommend granting this request. I, therefore, recommend entering a default judgment against defendant Williams in each plaintiff's favor in the amount of $12,380.00 for unpaid regular and overtime wages, for a total of $24,760.00, plus $3,750.00 for attorney's fees, and $475.00 in costs.

## IV. **CONCLUSION**

In sum, I recommend that:

1. The court GRANT plaintiff's second amended Motion for Entry of Default Judgment (Paper No. 16) to the extent that it requests a default judgment against defendant Hilda Williams;

2. The court award each plaintiff $12,380.00 in unpaid regular and overtime wages, for a total of $24,760.00, and jointly award plaintiffs $3,750.00 in attorney's fees and $475.00 in costs;

3. The court DENY all other requests set forth in plaintiffs' second amended Motion for Entry of Default Judgment (Paper No. 16);

4. The court DENY AS MOOT plaintiffs' initial Motion for Entry of Default Judgment (Paper No. 8) and first amended Motion for Entry of Default Judgment (Paper No. 13); and

5. The Clerk shall mail a copy of this Report and Recommendation to defendant Hilda Williams, personally, and as the resident agent of defendant Catherine's Properties, LLC, at the addresses listed on plaintiffs' Complaint (Paper No. 1).

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date:  7-14-10                                         /s/
                                                      Beth P. Gesner
                                                      United States Magistrate Judge